**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MARCELA SPILLERS**
**8403 Woodholme Circle,**
**Pasadena, MD 21122**

      **Plaintiff,**                             **Civil Action No.: 1:25-cv-3968**

**v.**

**DISTRICT OF COLUMBIA**
**c/o Office of the Attorney General**
**400 5ᵗʰ Street, N.W.**
**Washington, D.C. 20001**

      **Defendant.**

---

## COMPLAINT

---

Plaintiff Marcela Spillers, and for her complaint against the District of Columbia, and respectively avers as follows:

### PARTIES

1. Plaintiff Marcela Spillers is a resident of the state of Maryland.

2. Defendant is the government of the District of Columbia.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 as the parties are from different states and the amount in controversy exceeds $75,000.

4. Venue is proper under 28 U.S.C. § 1391(b) because Defendants conduct business and can be found in this judicial district.

5. The events giving rise to the claims in this action occurred in this judicial district.

### FACTUAL BACKGROUND

6.  On April 22, 2024, the District of Columbia Department of Forensic Sciences (hereinafter "DFS") offered Plaintiff Marcela Spillers a job as a Crime Scene Forensic Scientist. The pay for the position was for $62,158.00.

7.  Spillers accepted the position on April 22, 2024.

8.  Prior to DFS, Spillers worked as a Police Forensic Technician for the city of Savannah, Georgia. Spillers also worked as a Crime Scene technician for the city of Savannah.

9.  Spillers moved from to Washington D.C. to take the position with DFS.

10. Spillers employment with DFS was subject to a probationary trial period beginning on April 22, 2024 and that lasted for one year.

11. After hire, DFS required Spillers to train at an academy. Spillers passed all of her training courses at the DFS training academy.

12. Between April 2024 and November 2024, Spiller's supervisors rated her performance as "Valued Performer."

13. In fact, during her "Annual Performance" review in October 2024, Spillers was rated as a "Valued Performer."

14. In November 2024, Spillers was suddenly diagnosed with inflammatory bowel disease and liver disease. Both of these conditions substantially limited Spiller's ability to walk, work, eat and sleep.

15. Upon learning of the diagnosis, Spillers was forced to take a few days off from work. Spillers immediately underwent a procedure. Unfortunately, the procedure was unsuccessful.

16. Spillers requested Family Medical Leave from DFS in early December 2024.

17. In or around December 10, 2024, DFS Human Resources Specialist Renita Moore provided Spillers with a Paid Family Medical Leave application.

18. On December 17, 2024, Spillers completed the application and submitted it to Moore.

19. On December 19, 2024, Moore confirmed receipt of Spillers application for Paid Family Medical Leave.

20. On December 31, 2024, Moore approved Spillers for 64 hours of Paid Family Medical Leave, between December 30, 2024 to January 9, 2025.

21. On January 10, 2025, Moore emailed Spillers clearing her for duty.

22. On January 10, 2025, Spillers provided Moore with a doctor's note requesting to excuse Spillers from work, and to return to work on January 12, 2025.

23. On or about January 16, 2025, Spillers reached out to DFS Human Resources to talk about workplace accommodations. Spillers told Human Resources that her diagnosis and procedure would require workplace accommodations.

24. On January 17, 2025, Moore emailed Spillers setting up a meeting to discuss the workplace accommodation request.

25. On January 21, 2025, Moore and Spillers met to discuss workplace accommodations. Moore provided Spillers with a Reasonable Accommodation packet for her doctor and submit to provide it to DFS Human Resources for review and processing.

26. On February 24, 2025, Spillers stopped met with Moore about her workplace accommodation request.

27. On March 11, 2025, Moore emailed Spillers to discuss "reviewing" Spillers' accommodation request and requested additional information.

28. On March 24, 2025, Moore emailed Spillers to inform Spillers that "DFS Human Resources is able to consider a temporary "consistent work duty schedule" on the evening tour."

29. Between March 24, 2025-March 27, 2025, Spillers emailed Moore to follow up about her doctor's notes. Spillers told Moore that her doctor specified that he recommend that Spillers not work nights for 90 days. Consequently, Spillers asked again whether a "temporary

consistent work duty schedule on day tour could be considered for [Spillers] accommodations."

30. On March 31, 2025, Moore emailed Spillers and informed her that the Agency could only "assign [Spillers] to a "consistent work duty schedule" on either the midnight or evening tours' unfortunately there is not an operational staffing need on the day tour."

31. On March 31, 2025, Spillers emailed Moore stating, "after speaking to my doctor, none of the proposed schedules would be beneficial to my health conditions at this time and therefore I wish to remain on my current rotating schedule. I will work with my doctor to find alternative solutions."

32. On April 3, 2025, Spillers received an email from DFS Human Resources. The email indicated that she would be terminated from DFS.

33. Spillers' probationary period with DFS was set to expire on April 22, 2025.

34. DFS states that Spillers was terminated because Spillers "skillset was not a match for the needs of the Agency."

## CAUSES OF ACTION

### Count 1: District of Columbia Human Rights Act
### Retaliation

35. Spillers incorporates every preceding paragraph as alleged above.

36. Spillers engaged in protected activity prior to termination.

37. Spillers was performing above the expectations of her position at the time she was terminated.

38. An employee request for a reasonable accommodation is considered protected activity.

39. The Defendant terminated Spillers because she engaged in lawful protected activity.

40. WHEREFORE, Spillers prays for nominal damages; compensatory damages, in an amount to be determined at trial; punitive damages, in an amount to be determined at trial; attorney's fees

and the costs of this litigation; back pay, front pay, and future benefits, as may be appropriate; pre- and post-judgment interest; and any other relief the Court deems necessary and appropriate.

**Count 2: District of Columbia Human Rights Act
Disability Discrimination**

41. Spillers incorporates every preceding paragraph as alleged above.

42. Spillers was terminated because of her disability.

43. Spillers was performing above the expectations of her position at the time she was terminated.

44. WHEREFORE, Spillers prays for nominal damages; compensatory damages, in an amount to be determined at trial; punitive damages, in an amount to be determined at trial; attorney's fees and the costs of this litigation; back pay, front pay, and future benefits, as may be appropriate; pre- and post-judgment interest; and any other relief the Court deems necessary and appropriate.

**<u>JURY DEMAND</u>**

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: November 15, 2025

By: *_/s/Ikechukwu Emejuru_*
    Ikechukwu Emejuru
    **Emejuru Law L.L.C.**
    8403 Colesville Road
    Suite 1100
    Silver Spring, MD 20910
    Telephone: (240) 638-2786
    Facsimile: (240)-559-7923
    iemejuru@emejurulaw.com